ROBERT MARSHALL v. SMITH BLASS ET AL.

*Deed—Escrow—Trust—Executors and administrators—Fraudulent conveyances—Bill in equity.*

1. A deed was executed and left in *escrow*, to be delivered when the grantee had paid all of the claims against the estate of a deceased person. Neither the conveyance nor the agreement to pay was intended to be absolute. And it is held that creditors acquired no lien upon the land by virtue of such arrangement to secure the payment of their claims.

2. It is the duty of an administrator, on his own motion, or that of a creditor under the statute, to take the proper proceedings to remove a cloud from the title of land belonging to the estate which seriously interferes with its sale to pay the debts of the deceased; but such creditor cannot institute such a suit unless by leave of the court, after the refusal of the administrator to do so.

3 A creditor cannot be allowed to sell land on execution with apparently a valid lien upon it by which its marketable value is affected, and then institute proceedings to set aside the incumbrance as a fraud upon his rights. In such a case he should file his bill in aid of execution before sale.

4. Subsequent incumbrancers are not entitled to file a bill *simply* for the purpose of redeeming from a regular and valid statutory foreclosure.

Appeal from Kent. (Montgomery, J.) Argued July 2, 1890. Decided October 10, 1890.

Bill to declare an equitable lien, and to set aside a mortgage as fraudulent as to creditors of the estate of a deceased person. Complainant appeals. Affirmed. The facts are stated in the opinion.

*John M. Mathewson* (*Birney Hoyt*, of counsel), for complainant.

*M. H. Walker*, for defendant Smith Blass.

CHAMPLIN, C. J.   The bill of complaint in this case is filed for the purpose of obtaining an accounting between Smith Blass and the complainant as to the amount due upon a certain mortgage, hereinafter more particularly referred to, and also to have such mortgage set aside as fraudulent and void as against complainant, and to have the same delivered up and canceled, and for other purposes.

Complainant, in his bill, founds his claim for relief upon the following facts: In January, 1873, one Alpheus Burch died, and his estate was administered in the probate court of Kent county.   His son, Noah Burch, was first appointed administrator, but later he resigned, and Robert Hunter, Jr., was appointed administrator *de bonis non*, and still remains such administrator.   In April, 1870, Alpheus Burch was the owner of certain real estate, situated in the township of Lowell, Kent county, containing about 38 acres, and which in this opinion will be denominated "parcel No. 1."   Commissioners on claims were appointed, who allowed several claims against the estate of Alpheus Burch; which, with the amount allowed commissioners for services, aggregated $446.69.   Noah Burch, as administrator, returned an inventory of assets belonging to the estate in which he included two parcels of land, one of which was that designated as "parcel No. 1," and another which I shall designate as "parcel No. 2."   This inventory bears date May 7, 1873.   It also includes personal property, aggregating in amount $469.89. Later, and on May 13, 1874, he rendered his final account to the judge of probate, in which he makes and returns another inventory, setting up that, by mistake in his former inventory, he included the parcel of land No. 2, and a large amount of personal property, as having been improperly inventoried, and that the same belonged to the estate of Elizabeth Burch, deceased.   Upon this inventory

being filed, and his account rendered, he tendered his resignation as administrator, and, as before stated, Robert Hunter, Jr., was appointed administrator of the estate *de bonis non.* Among the accounts allowed against the estate by the commissioners was one in favor of Hunt & Hunter of $2.58, also one in favor of Parker & Weatherwax of $4, which claims complainant avers in his bill he has purchased, and is the legal and equitable owner of them.

The bill of complaint further states that on April 2, 1870, Alpheus Burch and Elizabeth Burch, his wife, by quitclaim deed, conveyed to Noah Burch parcel No. 1, and that the deed was recorded on September 15, 1874; that on May 25, 1875, Noah Burch and Marion W. Burch, his wife, conveyed, by quitclaim deed, parcel No. 1 to Olive Blass. The bill alleges that this deed was made to Olive Blass, under an agreement entered into between Noah Burch and Charles Blass and Olive Blass that they, or one of them, should pay all the indebtedness against the estate of Alpheus Burch which was allowed by the commissioners, except the claim of $112.31, allowed to Charles Blass, and that this deed was deposited in escrow with Robert Hunter, Jr., to be delivered to said Olive Blass by Hunter when said indebtedness should be fully paid and canceled by Olive and Charles Blass, or either of them, and when Charles Blass should cancel his claim, and that it should not be delivered until that time; that afterwards Alburn Rolf, in whose favor a claim had been allowed against the estate of $160, had a deal with and was owing the firm of Sprague Bros., and, desiring to pay said firm a certain sum of money, obtained a promissory note for the sum of $108, or thereabouts, made by Olive Blass and Charles Blass, payable to the order of Sprague Bros., with interest at 10 per cent.; that this note was for part of the amount due and owing from said

estate to Alburn Rolf, and allowed by the commissioners, and which said Olive Blass and Charles Blass, or one of them, had undertaken to pay as before stated. This note Sprague Bros. afterwards indorsed and discounted at the Lowell National Bank of Lowell, Mich., and it became the property of the bank. The note bears date September 30, 1875.

The bill further alleges that Elizabeth Burch, aforementioned, was the mother of Olive Blass, and that she died about July 11, 1871, and at that time she was the owner, in her own right, in fee-simple, of parcel No. 2; that, after the death of Elizabeth, such proceedings were had that Arvine Peek was appointed administrator of her estate, and, as such administrator, did on May 26, 1875, convey parcel No. 2 to said Olive Blass, which deed was recorded July 23, 1875; that the two parcels of real estate were all the real estate owned by said Alpheus Burch and Elizabeth Burch, or either of them, jointly or severally, at or about the time of their death, and that neither of them at that time had any personal property of any account whatever.

That the Lowell National Bank brought suit on June 7, 1876, against Olive and Charles Blass, before Milton M. Perry, Esq., a justice of the peace in said county of Kent, and obtained judgment on said note for $116.49 damages, and $5.21 costs of suit; that on January 14, 1879, the bank sold and assigned its interest in said judgment to James B. Sprague, and afterwards, about March 4, 1881, Sprague sold and assigned the judgment to complainant, Robert Marshall; that April 18, 1881, Marshall sold and transferred all of his interest in the judgment to the bank; that afterwards, and about April 22, 1881, the bank procured a transcript of the judgment, and filed it in the circuit court for the county of Kent, and caused execution to be issued out of that court, and placed in

the hands of the sheriff, who levied upon the real estate designated as "parcel No. 2," and on June 24, 1881, such premises were sold at sheriff's sale, and bid off by the complainant, Robert Marshall, for $150, and he received a certificate from the sheriff of such sale; that the premises were not redeemed, and on September 25, 1882, the sheriff made a deed of parcel No. 2 to Robert Marshall, the complainant, it being the same premises described as having been conveyed by said Arvine Peck to Olive Blass; that on June 16, 1884, the complainant obtained possession of such real estate by virtue of a writ of restitution, and has ever since been in possession thereof; and that such real estate is of the value of $500.

The bill further charges that on or about June 17, 1876, Olive Blass executed a mortgage upon parcel No. 2 to Smith Blass, a brother of her husband, Charles, purporting to secure the sum of $450, payable in three years from September 30, 1875, with interest at 10 per cent., according to a promissory note of even date of the mortgage executed by Olive Blass and Charles Blass, for which such mortgage was security; that this real-estate mortgage also covers the premises described in the quit-claim deed of May 25, 1875, in the custody of Robert Hunter, Jr.; that on June 8, 1883, Smith Blass commenced to foreclose the mortgage by advertisement, and caused a notice of mortgage sale to be published, and the same was sold under such notice at public auction on September 10, 1883, in two separate parcels, to the highest bidder; that the same were struck off in two parcels to Smith Blass, parcel No 1 for the sum of $100, and parcel No. 2 for the sum of $800, and on that day the sheriff executed to him a sheriff's deed of such real estate.

Complainant charges, on information and belief, that neither Olive Blass nor Charles Blass has paid or caused to be paid any of said claims mentioned as having been

proven before the commissioners, and that Robert Hunter, Jr., for that reason never has made delivery of said deed to said Olive Blass, or any one for her, and still retains the same in his custody as security for the payment of the claims aforesaid; that no legal or equitable title has ever passed to her of the land described in the deed in Hunter's hands; and that, at the time of making said mortgage, said Olive Blass had no legal or equitable title to the premises described in said deed. And he alleges that the persons owning said claims have an equitable first lien upon said premises for their pay, as their several claims shall be made to appear.

Complainant further charges, upon information and belief, that, at the time of making said mortgage by Olive Blass to Smith Blass, she was not indebted to him in any sum whatever; that no consideration ever passed from Smith Blass to her for the making thereof; that the same was made voluntarily, and without any consideration whatever, and there is no sum of money now due or owing thereon; and that said mortgage was made for the purpose of defrauding the creditors of Alpheus Burch out of their just dues, complainant's claim being one of them, as before stated.

Complainant further charges, upon information and belief, that Olive and Charles Blass claim and set up that said claims against said estate are now barred by the statute of limitations, and that there is not anything now owing thereon, and they have made such claim to Robert Hunter, Jr., and therefore claim to have a right to said deed, and have demanded the delivery of same of said Hunter; that Olive and Charles Blass have no means that can be reached by execution; and that, if they had, said creditors and complainant could not reach the same without the aid of this court, and only by reaching said real estate.

Complainant further charges, upon information and belief, that Smith Blass has not, and never had, any valuable interest in said mortgage; that the foreclosure proceedings were all in the control and in the interest of said Olive and Charles Blass; that parcel No. 2, described in said sheriff's deed, containing about 32 acres of land, was bid off in the name of Smith Blass, in the sum of $800, and he avers that to be in excess of the value of said premises, and that they are not worth to exceed the sum of $600; that they were bid off at the sum of $800, for the express purpose of cheating and defrauding the complainant of his said land, and claim against said Alpheus Burch; and that, unless said sale be set aside, and he (the complainant) be allowed to redeem said mortgaged premises, and be subrogated to all equitable rights of said Smith Blass in said mortgage, he will lose his claim entirely.

Complainant further alleges that parcel No. 1, sold at the mortgage sale, contained 38 acres of land, and was bid in for the sum of $100, when in fact it is of the value of $1,000; and he offers and agrees to allow or bid that amount thereon, if necessary, in order to have the proceeds applied on the claims herein mentioned. He also sets up that he has expended quite a sum of money in the payment of taxes on the real estate described in the mortgage, and that such payment was necessary to protect his interests. He also sets up that Smith Blass claims that, when the year allowed for redemption has expired, he will become the absolute owner of said premises under said foreclosure of mortgage, which time for redemption would expire on September 10, 1884.

The complainant filed his bill of complaint on September 2, 1884, and made Smith Blass, Charles and Olive Blass, Noah Burch, Robert Hunter, Jr., and the creditors

in whose favor claims were allowed, defendants in the suit.

The bill was taken as confessed as against each of the defendants except Smith Blass, who answered, admitting the proceedings in the probate court and the several conveyances set up in the bill, and also that the deed from Noah Burch and wife to Olive Blass was deposited with Robert Hunter, Jr., in escrow, to be delivered upon the performance of certain conditions unknown to the defendant, and that it remains in the possession of Robert Hunter, Jr., and that he refuses to deliver it to any person, and that there is a dispute between the parties and said Hunter as to the terms upon which said deed was to be left with him.

As to the transcript from the docket of Milton M. Perry, justice of the peace, he sets up that the proceedings therein were illegal, as there was an execution outstanding which had not been returned, and that that fact appeared upon the face of the docket.

He admits the execution of the mortgage from Olive Blass to him, and of the foreclosure thereof, and sale of the property, and avers that it was duly recorded on June 23, 1876, and that complainant had notice thereof at and before the time of buying and taking an assignment of the judgment; and he avers that the same is a valid lien upon the premises, and that the foreclosure and sale thereof were legal and valid. He explains that the reason why no more was bid for the first parcel was that the title of the same was in dispute, and that it was also subject to a prior mortgage executed by Alpheus Burch and his wife to Barbara Thompson on November 17, 1863, to secure the payment of $200 and interest at 10 per cent., which mortgage was then outstanding and unpaid. He also says that there was a dispute with reference to the

title, arising from the claims of two different sets of heirs to the property.

Defendant admits that the defendant Olive Blass has and had no legal title to the premises described in the deed in possession of said Hunter, and that he did not claim, and does not claim, that at the time of making said mortgage, or at any time thereafter, said Olive Blass had a good title to said land described in said deed. On the contrary, he knew at the time of taking said mortgage, and ever since has known, that his title to said land was imperfect, and that, at most, he had certain claims against it that might ripen into title.

Defendant denies that Olive Blass at the time of making said mortgage owed him nothing, and that no consideration therefor passed between the parties thereto, and that the same was made voluntarily or without consideration, and hence that there is no sum of money now due thereon; and denies that the mortgage was made for the purpose of cheating or defrauding the creditors of Alpheus Burch, as alleged in the bill, or for the purpose of cheating or defrauding any person whatever. He avers that he had loaned to Charles Blass, defendant, said sum of $450 and that Olive Blass, defendant, was owing Charles, and, in consideration thereof, secured said loan from defendant to said Charles Blass by giving the mortgage to him; that the same is now wholly due and unpaid, and remains so except as the foreclosure has paid and satisfied the same.

Defendant avers that, at the time of the foreclosure sale, one Peter D. Blass held and asserted against the 38-acre parcel of land two tax titles or deeds from the Auditor General of the State of Michigan, dated November 15, 1882, and February 1, 1883, for the unpaid taxes for the years 1879 and 1877; and that the deed of November

15, also conveyed to Peter D. Blass the 34-acre parcel in question in this suit; and that, since the date of said mortgage sale, the defendant has purchased and holds all the right, title, and interest of Peter D. Blass to said premises by virtue of said tax deeds, or otherwise.

Defendant avers that he is ready to come to a full and fair accounting of the amount due on said mortgage with the complainant or any person entitled to the same, but he denies complainant's right thereto, and he denies his right to redeem therefrom, and denies that complainant has a right to the assignment thereof, or to be subrogated to the defendant's rights, and asks, under the Supreme Court rule providing for the same, that he may have the benefit of his answer as a cross-bill, and affirmative relief given him, the same as if a cross-bill were filed by defendant.

The case was heard upon proofs taken in open court, before the Honorable R. M. Montgomery, circuit judge, who entered a decree dismissing complainant's bill, and giving relief to defendant upon his cross-bill, from which decree complainant has appealed to this Court.

Complainant's proofs fail to make out any case for equitable relief. He has shown by the testimony of Robert Hunter, Jr., that the deed of parcel No. 1 was placed in his hands in escrow, and upon condition that it should not be delivered until after evidence was furnished to him showing that all the debts allowed by the commissioners against the estate of Alpheus Burch had been paid, and that he should then deliver the deed to Olive Blass; that he has not delivered the deed because evidence of the payment of the debts against the estate has not been furnished to him; that the deed has been in his custody all the time, subject to these conditions. The testimony conclusively shows that the debts have been paid only partially, and those by the administrator; that

Robert Hunter, Jr., is still the administrator of the estate; and that he has inventoried the lands described in parcel No. 1 as the property of the estate.

The testimony shows that the deed from Alpheus Burch to Noah Burch was made in consideration of an agreement that Noah Burch should support and maintain his father, Alpheus, and his mother, Elizabeth, so long as they lived; and that, after going upon the lands described in the deed, and discharging his part of the agreement for a short time, a dispute between him and his father arose, and it was mutually agreed that the transaction in which the deed originated should be considered at an end; and that he thereupon surrendered the deed of the premises to his father, and made no claim under the deed since that time; and that, after he was appointed administrator, he found the deed among his father's papers, and it was then unrecorded; and that he (Noah Burch) does not know who placed it upon record.

It is unnecessary to pass upon the validity of the arrangement made between Noah Burch and Charles and Olive Blass with reference to the payment of the debts by the latter. The conveyance was not intended to be absolute. Neither was the agreement absolute to pay the debts. If they had paid up every debt in full, then the deed was to be delivered; otherwise, not. Without deciding whether, under such an agreement as this, the creditors of the estate could maintain an action against Charles and Olive Blass to recover the amounts due them, it is clear that such creditors would have no lien upon the land by virtue of such agreement to secure them for such debts against the estate. Had the deed from Noah Burch to Olive Blass been delivered absolutely, under an agreement that she should pay all the debts proved against the estate of Alpheus Burch, the case would have presented some different features from those it now possesses.

Then the question would have been presented whether a trust had been created in Olive Blass for the benefit of the creditors which they could enforce in equity. But the title never passed to her clothed with a trust, but it remains in her grantor unaffected by the mortgage she subsequently gave to Smith Blass. The testimony shows that the claims against the estate of Alpheus Burch allowed in favor of Parker & Weatherwax and Hunt & Hunter were both paid by Noah Burch, administrator, in August, 1873. This fact was conceded by complainant's solicitor upon the introduction of the testimony in open court. His claim, therefore, that he is a creditor of the estate by virtue of having purchased these claims falls to the ground, and all claim of an equitable lien upon parcel No. 1 falls with it.

The title of parcel No. 1 may be so clouded by the conveyances from Alpheus Burch to Noah, and from him to Olive Blass, as to affect seriously the sale of such real estate by the administrator. Indeed, the testimony shows that the administrator has obtained license to sell it, and has been hitherto unable to do so. In such case it would be his duty, either of his own motion, or upon the motion of some creditor under the statute, to take the proper proceeding to clear the cloud from the title, and to set aside and cancel the two deeds, if the parties claiming through them, or in whose name the legal title stands, should refuse on request to quitclaim their interests. When this is done, the land appears to be of sufficient value to pay all claims against the estate. But a creditor cannot institute such suit, unless by leave of court after the administrator has refused. The complainant, therefore, has failed to make a case as to parcel No. 1.

Parcel No. 2 never belonged to the estate of Alpheus

Burch. The bill alleges it to have belonged to Elizabeth Burch in her life-time. No question is made of the validity of the conveyance from the administrator of Elizabeth Burch to Olive Blass. The mortgage from Olive Blass to Smith Blass was executed in June, 1876, and was promptly recorded. The levy in favor of the Lowell National Bank was made April 27, 1881. It would therefore appear upon the face of the papers that the complainant's rights under the levy to parcel No. 2 are subject to the mortgage debt.

Complainant claims that the mortgage was made for the purpose of cheating and defrauding the creditors of Alpheus Burch's estate. This charge is made upon information and belief, and the only support it has in the proof consists in the fact that on September 30, 1875, a note was made by Charles and Olive Blass to Sprague Bros., a part of the consideration for which the note was given being a part of the claim against the estate of Alpheus Burch allowed in favor of one Alburn Rolf; that a suit was brought on this note June 7, 1876, and the mortgage was executed June 17, 1876; and the attorney who drew the mortgage testified that he saw no money pass from Smith Blass to the mortgagors upon that occasion. From this testimony, we are asked, not only to infer fraud, but to find that this mortgage is wholly void, as made with an intent to cheat and defraud the creditors of Burch's estate. The testimony will not warrant us in coming to that conclusion. It fails to show either fraud in fact, or a fraudulent intent. Moreover, it has repeatedly been held by this Court that under such charge the complainant's bill should have been filed in aid of execution before sale. He cannot be permitted to sell the property under the execution with apparently a valid lien upon it, by which its marketable value is affected, and

then afterwards proceed to set aside the incumbrance as a fraud upon his rights.

There is no charge that the foreclosure by advertisement was not in all respects regular and valid. Subsequent incumbrancers in such case should redeem in accordance with the statutory provisions, and are not entitled to file a bill in chancery simply for the purpose of redeeming. It is true that complainant charged that the amount claimed in the notice of foreclosure sale was not due and owing upon the mortgage. This was denied by the answer, and the complainant has failed to substantiate his charge by proofs.

From a consideration of the whole case, we think the decree of the circuit court should be affirmed, with costs; and it is so ordered.

The other Justices concurred.

A motion for rehearing was made in this case on December 4, 1890, and on December 24, 1890, the following opinion was filed:

PER CURIAM. In this case a motion for a rehearing is made, based on several grounds, only one of which merits attention.

In the opinion handed down, it was held that the defendant Smith Blass had no legal or equitable interest in the first parcel of land, being the parcel described in the deed in escrow to Robert Hunter, Jr. The Court, at the conclusion of the opinion, affirmed the decree below, which declared that Smith Blass was the legal and equitable owner of both parcels of land, as against any and all claims of complainant, and that said Smith Blass was entitled to the possession of the premises, and directed complainant to give up and restore possession to him on demand, etc. It should have been modified in accordance with the opinion affirming it as to the second parcel

covered by the Smith Blass mortgage, and dismissing both the original and cross-bills of complaint as to parcel No. 1, referred to, without prejudice. No rehearing will be granted, but the decree entered will be modified accordingly. No costs will be awarded to either party upon this motion.