COMSTOCK v. HORTON.

1. PARTNERSHIP—EQUITY—JURISDICTION OF COURT TO DETERMINE LIABILITY OF PARTNER TO INSOLVENT PARTNERSHIP.

Where a member of a partnership operating a private bank, the affairs of which were in a precarious condition, expressly authorized his attorney to institute proceedings for the appointment of a receiver, the dissolution of the partnership, the winding up of its affairs, and for general relief, he submitted himself to the jurisdiction of the equity court, which thereby acquired jurisdiction to determine his liability on certain notes carried as assets of the bank.[1]

[1]Partnership, 30 Cyc. p. 731 (Anno).

2. APPEAL AND ERROR—DECREE AGAINST PARTY NOT APPEALING MAY NOT BE CHANGED ON APPEAL—LIABILITY OF NONAPPEALING PARTY MAY BE CONSIDERED ON QUESTION OF JURISDICTION.

Where a member of a partnership did not appeal from a decree holding her liable on certain notes, the decree may not be changed, on appeal, but, in determining the question of jurisdiction, the Supreme Court should consider whether she is liable as matter of law.[2]

3. LIMITATION OF ACTIONS—EQUITY WILL APPLY STATUTE.

Since, under 3 Comp. Laws 1915, § 12336, payments made by certain makers of notes did not toll the statute of limitations as to another maker who made no payments thereon, equity, in proceedings to determine the liability of partners to the partnership on certain notes, will by analogy apply the statute of limitations.[3]

4. PARTNERSHIP—INDIVIDUAL LIABILITY OF PARTNERS TO INSOLVENT PARTNERSHIP SHOULD BE DISCHARGED BEFORE DEFICIENCY APPORTIONED.

In proceedings for the dissolution of an insolvent partnership, each member who is liable to the partnership should discharge such individual liability before the deficiency is apportioned among them.[4]

5. LIMITATION OF ACTIONS—PAYMENTS MADE BY INDIVIDUAL PARTNER TOLLED STATUTE AS TO HIM.

Payments made by one partner on notes to the partnership signed individually by the three partners tolled the statute of limitations as to him.[5]

6. PARTIES—WIFE OF PARTNER PROPER PARTY WHERE AFFECTED BY DECREE—PARTNERSHIP.

Where the validity of the conveyances of certain lands held by a partner and his wife by the entireties was attacked by the receiver of the partnership, the wife, although not a necessary party, was a proper party, since if the conveyances were held void as to creditors of the partnership, she would have to pay the amount of the decree to protect her interest.[6]

7. CREDITOR'S SUIT—CONDITION PRECEDENT.

To authorize the filing of a bill in aid of execution, there must be a judgment or decree fixing the amount, an execution issued thereon, and a levy by virtue thereof, and

[2]Appeal and Error, 4 C. J. § 2603; [3]Limitations of Actions, 37 C. J. § 145; [4]Partnership, 30 Cyc. p. 691; [5]Limitations of Actions, 37 C. J. § 648 (Anno); [6]Parties, 30 Cyc. p. 125 (Anno); Partnership, 30 Cyc. p. 731 (Anno).

to authorize the filing of a creditor's bill there must be a judgment or decree fixing the amount and an execution issued and returned unsatisfied in whole or in part.[7]

8. FRAUDULENT CONVEYANCES—PARTNER VOLUNTARILY SUBMITTING TO JURISDICTION OF COURT NOT AN ABSCONDING DEBTOR.

A partner who voluntarily submits himself to the jurisdiction of the court, in proceedings for the dissolution of an insolvent partnership, cannot be said to be an absconding debtor in a foreign jurisdiction, rendering inapplicable the rule requiring a judgment fixing the amount, and an execution returned unsatisfied, as a condition precedent to proceedings by the receiver of the partnership to set aside certain conveyances of land claimed to be void as to creditors of the partnership.[8]

9. COSTS—INEQUITABLE TO AWARD PARTNER COSTS TO BE PAID OUT OF FUNDS CONSERVED FOR CREDITORS.

Where, in proceedings to dissolve an insolvent partnership, it would be inequitable to award an appealing partner costs which would have to be paid out of the fund being conserved for creditors, no costs will be awarded him, although the decree against him was reduced.[9]

10. SAME—WIFE OF PARTNER ENTITLED TO ONE-HALF OF COSTS ON APPEAL WHERE SHE PREVAILED.

Where there was but one record and one set of briefs for a partner and his wife, who were joined in proceedings by the receiver of the partnership to set aside conveyances of land held by them by the entireties, the wife, who prevailed on appeal, is entitled to recover one-half of the costs of the appeal.[10]

Appeal from Otsego; Smith (Guy E.), J. Submitted April 29, 1926. (Docket No. 122.) Decided June 7, 1926.

Bill by Almon B. C. Comstock and another against J. Lottie Horton and others for the appointment of a receiver for the Exchange Bank of Vanderbilt: On petition of Fred J. King, receiver, to set aside certain conveyances in fraud of creditors of the bank. From

[7]Creditors' Suits, 15 C. J. §§ 16, 34, 39, 43, 53; [8]Fraudulent Conveyances, 27 C. J. § 583 (Anno); [9]Partnership, 30 Cyc. p. 750 (Anno); [10]Costs, 15 C. J. § 664.

the decree rendered, plaintiffs appeal.    Reversed, and decree entered.

*Kinnane & Leibrand,* for plaintiffs.

*Stoddard & McMillan,* for petitioner.

For some time prior to November 4, 1914, Almon B. C. Comstock, Charles A. Quick, J. Lottie Quick, and J. Lee Morford were partners operating a private bank at Gaylord known as the Otsego County Bank, and one at Vanderbilt known as the Exchange Bank of Vanderbilt.    On this day Mr. Morford sold and transferred his interest in both banks to the other partners.    In the winter of 1915 the Otsego County State Bank was organized under the banking law and succeeded to and took over the business of the Otsego County Bank. The three partners continued to operate the Exchange Bank of Vanderbilt.    December 6, 1922, Charles A. Quick died leaving a widow, defendant Celia A. Quick, and heirs, defendants Grant Quick, Virginia Quick, Lamont Quick, Lavern Quick, and Veva Clack.    It fairly appears that he left no estate outside of what interest he had in the bank.    J. Lottie Quick married a man named Horton and is the other defendant; she moved to Flint, and for a number of years has had no active connection with the bank.    The record fairly discloses that for many years the Vanderbilt bank did not have sufficient good assets to meet its liabilities, although Mr. Comstock was until recently a man of considerable means.    He was well along in years and went to California, it is claimed, for his health.    In the summer of 1924 the affairs of the bank were in a precarious condition.    Mr. W. L. Townsend, an attorney of high standing residing at Gaylord, had for many years been the attorney for Mr. Comstock. Mrs. Comstock was then in Gaylord; she gave Mr. Townsend $500 to be used for the benefit of the bank, .

but it was only a drop in the bucket. She and Mr. Townsend joined in a telegram to Mr. Comstock requesting authority to Mr. Townsend to institute proceedings on Comstock's behalf for the appointment of a receiver. The authority was promptly wired Mr. Townsend, and he filed a bill for Mr. Comstock asking for the appointment of a receiver, the dissolution of the partnership, the winding up of its affairs, and for general relief. Fred J. King was appointed receiver, qualified as such, and took possession of the assets of the bank. Later Mrs. Comstock was made a party and personally served with process.

Among the assets of the bank the receiver found several notes, long past due, signed individually by the copartners, Comstock, Quick, and Mrs. Quick, upon which they were jointly and severally liable. He also found other paper, long past due, upon which it is claimed they were liable by indorsement, and other items for which it is claimed they were also liable individually. He filed a petition to have their liability fixed on these various items, and also sought to have certain conveyances set aside. These conveyances were made under the following circumstances: Mr. Morford was indebted to the partnership in a considerable amount; in part payment of such indebtedness he deeded 320 acres to Mrs. Quick as trustee for the Otsego County Bank; she on behalf of the bank deeded the land to Comstock. It is not claimed there was bad faith up to this point or that the bank was defrauded in any way by the transaction. After Comstock received title, he deeded the land to his daughter, who deeded it back to Comstock and wife as tenants by the entirety, thus placing it beyond the reach of an execution. It is this later transaction that is claimed to be in fraud of creditors. Other lands are mentioned but this is the important and valuable piece involved. Mrs. Horton answered and claimed

the benefit of the statute of limitations.  Mr. and Mrs. Comstock made a motion to dismiss, and both claimed and now claim that the court had no jurisdiction to grant the relief asked or any of it either as matter of law or of fact.  Mr. Comstock also invokes the statute of limitations in his defense.  From a decree granting the relief prayed, Mr. and Mrs. Comstock appeal.  Mrs. Horton does not appeal.  Counsel for the receiver thus state the questions before us:

"The questions in the case seem to us to be as follows:

"(1) Was the receiver authorized to proceed as he did in this case against Mr. Comstock to require him to pay his indebtedness upon these notes?

"(2) Was Mr. Comstock liable upon the notes in question?

"(3) Did the court have jurisdiction to make Mrs. Comstock a party to the proceedings?

"(4) Was it proper to include in the receiver's petition the matter of the title to the land which the receiver alleged had been fraudulently put in the name of Mr. and Mrs. Comstock as tenants by the entirety?

"(5) Was the court justified in holding that this transaction was fraudulent as to the bank, its creditors and depositors?"

Counsel for the Comstocks add a 6th question which they discuss under the head:

. "Appropriating land, the title of which was in Hattie Comstock, for the debts of Almon Comstock."

FELLOWS, J. (*after stating the facts*).  1. There is no justification for any criticism of Mr. Townsend. He had been attorney for Mr. Comstock for many years.  There was grave danger that the assets of the bank would be dissipated, grave danger that many suits would be started, grave danger that Mr. Comstock would be called upon to make up a large deficit unless prompt action was taken to conserve the assets.

Mrs. Comstock was on the ground, presumably knew the situation, and joined in the request to her husband to wire Mr. Townsend authority to institute the proceedings. This he did. The original bill was filed by express directions of Mr. Comstock. By it he sought the dissolution of the partnership, the winding up of its affairs and general relief. By it he submitted himself to the jurisdiction of the court and asked to have the partnership affairs wound up. By it the court acquired jurisdiction, and it is difficult to perceive how he can now complain of appropriate action taken for that purpose. *Wabash Railway Co.* v. *Marshall,* 224 Mich. 593. In that case the plaintiff sought relief against the defendants in the State court. The defendants in defense and by way of cross-bill sought certain relief from plaintiff. It was urged by plaintiff that such matter should be litigated in the Federal court. But this court held that, having selected the State court as the forum, plaintiff could not object to defendants' asserting their defense by way of cross-bill in such forum. So here, Mr. Comstock appealed to a court of equity to adjust the partnership affairs and he can not complain if they are there adjusted.

If all the copartners were at this time jointly and severally liable as makers of the notes and also liable on the other items involved in the receiver's petition, we would have little difficulty in agreeing with appellant's counsel that this proceeding was unnecessary, as their liability could be eventually fixed when the amount of the deficiency is ascertained. But as we shall presently show, we reach the conclusion that Mr. Comstock is liable on two of these notes. On the other hand, we reach the conclusion that Mrs. Horton is not now liable on any of them. The decree makes her liable on all the items, and as she had not appealed we can not change decree in her favor, but, in determining

the question of jurisdiction, we may and should consider whether she is liable as matter of law. All of the items involved were more than eight years old. No payments on any of them had ever been made by her. Payments made by other makers did not toll the statute of limitations as to her (3 Comp. Laws 1915, § 12336). And equity will by analogy apply the statute of limitations. *German American Seminary* v. *Kiefer,* 43 Mich. 105. As matter of law Mrs. Horton is not liable on any of the items and as we shall presently see Mr. Comstock is liable on two of them. Manifestly, each individual member who is liable to the partnership should discharge such liability before the deficiency is apportioned between them. We think the court had jurisdiction to fix the liability of Mr. Comstock to the firm.

2. As noted above, we conclude that Mr. Comstock is liable on two of the notes and is the only one left who is liable on any of the items. We will now state our reasons and the notes to which they apply. The first of these notes bears date October 29, 1915, given for $1,000, and signed individually by the three members of the firm. The other bears date March 29, 1916, is given for the sum of $2,500, and is likewise signed individually by the three members of the firm. On each of these notes appears an indorsement of $60 "paid on principal by A. B. C. Comstock." These indorsements were made by the agent of Comstock, and we are satisfied, although the dates do not exactly coincide, they were made pursuant to the instructions of Mr. Comstock's letter of November 6, 1920, inclosing a remittance of $120. These payments on these notes by Comstock prevent the running of the statute as to him. We are not satisfied the proof establishes payment by him on the note of February 5, 1916, for $1,000, nor are we satisfied that the contribution of $500 by Mrs. Comstock shortly before the

bank failed was made under such circumstances as would authorize the indorsement of payment by Comstock on notes signed by him and thus toll the statute. For the reasons stated in considering the application of the statute of limitations to the liability of Mrs. Horton, we hold that the statute has run in Mr. Comstock's favor as to the other items involved.

3. Mrs. Comstock was not a necessary party but we are not persuaded that she was not a proper party. By the conveyances she and her husband held title by the entireties to land which it is sought to reach by levy and sale. As between her and her husband, the conveyances were valid irrespective of whether they were valid as to creditors. If they were set aside as to creditors and a levy made on the lands, she would be obliged to pay the amount of the decree if she desired to protect her interest, otherwise they would be sold. At some time and in some court she should be heard as to the amount of such levy. In *Weatherby* v. *Kent Circuit Judge,* 194 Mich. 46, and *McMillan* v. *School District,* 200 Mich. 280, we held that one who ultimately might be called upon to pay the judgment was a proper party and permitted intervention under the statute. So here we think she was a proper party to the proceedings.

4. But we are satisfied the decree was erroneous in setting aside these conveyances in this proceeding. This court has consistently held that to authorize the filing of a bill in aid of execution there must be a judgment or decree fixing the amount, an execution issued thereon and a levy by virtue thereof, and to authorize the filing of a creditor's bill there must be a judgment or decree fixing the amount, an execution issued and returned unsatisfied in whole or in part. Among the numerous cases, see *Grenell* v. *Ferry,* 110 Mich. 262; *Marshall* v. *Blass,* 82 Mich. 518; *Tyler* v. *Peatt,* 30 Mich. 63; *Nugent* v. *Nugent,* 70 Mich. 52; *Jenks* v.

*Horton,* 114 Mich. 48; *In re Abbott,* 187 Mich. 229. But counsel for the receiver insist that Comstock is an absconding debtor, in a foreign jurisdiction, can not be sued here and, therefore, such rule is not applicable, and *Earle* v. *Kent Circuit Judge,* 92 Mich. 285, is relied upon. It will hardly do to say that one who has voluntarily submitted himself to the jurisdiction of the court in this State, as we have held Comstock did, should be put in the same category with those who flee the State and thus escape services of process. But in the *Earle Case,* the proceedings were taken to enforce rights on a New York judgment upon which execution had issued and been returned unsatisfied. In *Jenks* v. *Horton, supra,* it was said by Mr. Justice HOOKER, speaking for the court:

"It is a rule both of common law and by statute that before the aid of equity can be invoked to subject equitable assets, not liable to execution, to the payment of a debt, all legal remedies shall be exhausted; and, where the defendant is a resident, it must appear that a judgment at law has been obtained, execution issued, and returned unsatisfied. We are not prepared to say that a decree of a court of equity, upon which execution had issued, and been returned unsatisfied, would not be sufficient to justify filing a creditor's bill, or a bill in aid of execution; but in the absence of a personal judgment or decree, and return of execution *nulla bona,* a bill does not ordinarily lie. * * *

"The case of *Earle* v. *Kent Circuit Judge,* 92 Mich. 285, is cited in support of the practice in this case. But there was a showing in that case that the defendant was a nonresident, and had no property subject to execution in this State, while the complainant had an uncollected judgment against him in New York. An amendment alleging the issue and return unsatisfied of execution upon the New York judgment was permitted, and the judge's order permitting the amendment was sustained. We think this case does not support the proposition that a bill might be filed to reach equitable assets, not only before execution issued, but before judgment."

It should be noted in passing that the conveyances here sought to be set aside are not conveyances of partnership property. As we have stated there is no claim of fraud in the purchase of the property by Comstock from the partnership. The conveyances assailed are of his individual property, which it is claimed has been put beyond the reach of the partnership creditors. In so far as the petition seeks the setting aside of the conveyances, it will be dismissed, but without prejudice to filing an original suit for such purpose after the necessary preliminary steps have been taken.

5, 6. Under these heads counsel discuss at length the facts pro and con on the question of the *bona fides* of conveyances. As we have held that this proceeding is inappropriate for decision of this question, we shall not discuss the facts.

Costs. While we have reduced the decree against Mr. Comstock we have still awarded a substantial amount. Under the circumstances it would seem inequitable to award him costs which would have to be paid out of the fund being conserved for his creditors; so no costs will be allowed on his appeal. Both he and Mrs. Comstock appealed. There was but one record and one set of briefs filed for them both. She will, therefore, recover one-half of the costs of the appeal.

The decree appealed from will be reversed and one here entered in conformity with this opinion.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.