KING v. COMSTOCK.

1. FRAUDULENT CONVEYANCES—CONSIDERATION—HUSBAND AND WIFE.
   Where a debtor, without consideration, caused the title of land to be transferred from himself solely to himself and wife as tenants by the entireties, the transfer was fraudulent as to existing creditors. .

2. SAME—BURDEN OF PROOF AS TO BONA FIDES OF TRANSACTION—ESTATES BY ENTIRETIES.
   In a suit in aid of execution, evidence on behalf of debtor's wife *held*, insufficient to meet the burden of proof under Act No. 215, Pub. Acts 1917, to establish the *bona fides* of a transaction whereby title to land in the husband solely was transferred to them as tenants by the entireties.

Appeal from Otsego; Smith (Guy E:), J. Submitted October 16, 1928. (Docket No. 109, Calendar No. 34,026.) Decided December 4, 1928.

Bill in aid of execution by Fred J. King, receiver of the Vanderbilt Exchange Bank, against Almon B. C. Comstock and Hattie Comstock. From a decree for plaintiff, defendant Hattie Comstock appeals. Affirmed.

*A. H. McMillan,* for plaintiff.

*Kinnane & Leibrand,* for appellant.

NORTH, J. This is a bill filed in aid of execution. Most of the facts and circumstances out of which the suit arises are reported in *Comstock* v. *Horton,* 235 Mich. 282. Subsequent to taking the decree in that case, which fixed Mr. Comstock's liability in the

amount of $5,540.17, the plaintiff herein caused successive executions to be issued by means of which partial satisfaction of the decree was obtained; and thereafter he caused another execution to be issued and a levy to be made upon 320 acres of land to which the defendants held title as tenants by entireties. This bill was filed for the purpose of securing cancellation of two deeds by which Mr. Comstock changed the title to this 320 acres of land from his sole ownership to that of himself and wife as tenants by entireties; and to enable the receiver to obtain satisfaction of the uncollected portion of the decree by the sale of this land. Service was obtained upon both Mr. Almon B. C. Comstock and his wife, Hattie Comstock. Mr. Comstock was defaulted for want of answer. Mrs. Comstock contested the case, but a decree was entered against her in the circuit, and she has appealed.

The property in question cost $6,000, and it is the claim of the appellant that she paid one-half of the purchase price from her own funds, and that she therefore has a valid claim upon the property for that amount together with accrued interest. If this claim is satisfied, she has expressed a willingness to release any interest she may have in the property notwithstanding Mr. Comstock had died before the hearing in the circuit court, and she as his survivor had become the sole possessor of the record title.

The plaintiff herein is the receiver for the Vanderbilt Exchange Bank, a private banking institution, which, prior to the receivership, was owned and conducted by a copartnership consisting of Mr. Comstock and two others. It is the claim of the appellee that the change of title of the property in question from Mr. Comstock to himself and wife was without consideration, and since at the time of this transaction Mr. Comstock and his copartners were in-

debted to the bank on obligations which were later evidenced by the renewal notes on which the decree for $5,540.17 was based, such transaction must be held to be a fraud upon the creditors of the bank, which is now insolvent. The relief here sought by the receiver is invoked under Act No. 215, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 12897), which in part is as follows:

"In all suits begun or hereafter to be begun by the filing of bills in aid of execution, the complainant shall make a *prima facie* case by introducing in evidence the judgment against the principal defendant, the execution with the levy or levies thereon indorsed and proof of the conveyance or conveyances complained of. The burden of proof shall then be upon the judgment debtor, or the person or persons claiming through or under him or the person or persons whom it is claimed are holding property in trust for said judgment debtor to show that the transaction or transactions are in all respects *bona fide* or that said person or persons are not holding as a trustee or trustees of said judgment debtor."

The plaintiff having made a *prima facie* case, the question for our consideration and determination from the record is whether Mrs. Comstock has shown that the transaction whereby she obtained her interest in this property was in all respects *bona fide*. This change of title from Mr. Comstock to himself and wife as tenants by entireties occurred June 4, 1915. The testimony sustains the plaintiff's contention that the notes on which the decree against Mr. Comstock for $5,540.17 was based were renewals of former obligations of Mr. Comstock and his co-partners to the Vanderbilt Exchange Bank, which were outstanding at the time Mr. Comstock caused the title to the property in question to be changed to himself and wife,

The bill of complaint charges that the transaction assailed was consummated with the intention of defrauding the creditors of Mr. Comstock and of the bank, and that it was without consideration. If it was without consideration, it was a fraud in law as to existing creditors. *Cole* v. *Brown,* 114 Mich. 396 (68 Am. St. Rep. 491). By reason of the statute above quoted the burden of proof was imposed upon Mrs. Comstock as grantee to establish such consideration. The testimony of Mr. and Mrs. Comstock was taken by deposition for use in case of *Comstock* v. *Horton, supra,* and by stipulation these depositions have been used in this case. Both Mr. and Mrs. Comstock testified that she paid $3,000 of her own money towards the purchase price of this property; but notwithstanding this, we find much in the record which seems to render this testimony quite incredible. At the time the depositions were taken Mr. Comstock was a sick man whose memory seemed seriously impaired. He testified he "presumed" his son, who died in 1909, left an estate of $10,000 or $15,000 and "probably" Mrs. Comstock received from that estate the $3,000 which she contributed toward the purchase price of the property here involved. His son died intestate and Mr. and Mrs. Comstock each received one-fourth of his estate; but Mr. Comstock was unable to recall what amount he received.

Mrs. Comstock told much the same story on direct examination, but when cross-examined it soon developed she was far from being a frank and fair witness. At one time she testified she received from her son's estate between $4,000 and $5,000, but later she fixed the amount as being $3,000 to $4,000. From the inventory and final account it appears quite conclusively that Mrs. Comstock's one-fourth interest therein could not have exceeded $2,000. At first she

testified she turned this money over to her husband something like a year after the son's death, but upon having it called to her attention that the son died five or six years before the land was purchased by Mr. Comstock, she admitted her error. The following indicates the unsatisfactory character of her testimony:

"*Q.* You were mistaken when you said about a year's time after your son died you turned this money over to your husband?

"*A.* Sure, I'm mistaken.

"*Q.* Three thousand dollars accounted for. What did you do with the balance?

"*A.* Did what I liked with it.

"*Q.* Where did you get the money to buy this property in Ontario?

"*A.* I had three or four houses back there. Sold some houses and lots.

"*Q.* Where did you get this money to start with?

"*A.* Got it out of my son's estate.

"*Q.* You got between three and four thousand dollars out of your son's estate and let your husband have three thousand dollars. Couldn't buy a house with what was left. Where did you get the money?

"*A.* I am not going to tell you.

"*Q.* These people want to know where this money came from to buy this house.

"*A.* I wouldn't say where the money came from to buy this property in California. I can tell you but I don't think it any of their business. My mother died a while ago and left me some property.

"*Q.* How much money did she leave you?

"*A.* Two thousand dollars.

"*Q.* How long ago?

"*A.* I couldn't tell."

Her attempted explanation as to where she kept her money during the years prior to the time when she claims she invested it in this property is lacking

in probative force. The record discloses that Mrs. Comstock bought and owned the home in California in which she and her husband lived, and that she also possessed some vacant lots, but the value of her interest in these properties is not disclosed by the record. She testified that in 1924, when she was at Grayling, Michigan, she contributed $500 to relieve the distressed condition of the Vanderbilt Bank; and when asked if it was her money and from what source she obtained it, she testified: "I got some out of interest. I have several mortgages." Thus it appears that whatever she received from her son's estate and from her mother's estate is accounted for, and the probability of her having invested this money or any of it in the property here involved, as she now claims, is rather remote. There is credible testimony that Mr. Comstock stated at different times that he was placing his property beyond the reach of his creditors. A Mr. Morford was owing Mr. Comstock $750 on two notes, and at the latter's request, in lieu of these, a note for that amount was given by the debtor to Mrs. Comstock. Regarding this transaction Mr. Morford testified:

"He (Mr. Comstock) was very frank in his statement regarding his reasons; he said it was in regard to avoiding responsibility to the creditors of the Vanderbilt Exchange Bank."

The transaction just noted was remote in point of time from that involved in this suit, but it corroborates other testimony which tends strongly to sustain the plaintiff's case. We are of the opinion that the defendant has not established the *bona fides* of the transaction whereby she became possessed of the title to the land involved; but that on the contrary the transaction appears to be one of several whereby Mr. Comstock, in anticipation of financial

adversities, sought to put his property beyond the reach of his creditors. The circuit judge decreed that the deeds by means of which Mrs. Comstock became a joint tenant with her husband in this property should be set aside.

That decree is affirmed, with costs to the appellee.

FEAD, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.